State v. Edie.

---

THE STATE v. EDIE, Appellant.

Division Two, February 7, 1899.

1. **Rape:** EVIDENCE: CORROBORATION.   Defendant was charged with an assault with intent to rape, and the prosecutrix testified that he came to her room, threw himself against the door to prevent her escape, and in her efforts to get him away from the door she was thrown against the wall by him, then on the bed; that he got on her and held her down with his hands on her shoulders and his knee on her body, and then she loudly screamed, and that these things brought her cousin, who was at work at the barn, to her relief. *Held*, that the screams for help and the noise of the struggle which

brought her cousin to her relief and thus foiled her assailant, are strong corroborative evidence of her testimony.

2. ———: ———: DENIAL TO STRANGER. Where the injured woman in a trial for assault with intent to rape has complained to her natural protector and kinsman immediately on seeing him, the appellate court will not reverse the case simply because she pre-viously refused to make explanation and gave evasive answers to a neighbor who was attracted to the scene by the screams and noise attending the struggle between her and the defendant.

3. Criminal Practice: REPEATING INSTRUCTION. Where the court has fully instructed on the presumption of innocence, it is not error to refuse an instruction offered by defendant which repeats the one given for the State.

4. ———: REMARKS OF PROSECUTING ATTORNEY. The burden is on the defendant to show that the remarks of the prosecuting attor-ney were prejudicial and constituted reversible error.

*Appeal from Chariton Circuit Court.*—HON. W. S. STOCKWELL, Special Judge.

AFFIRMED.

C. C. HAMMOND and CRAWLEY & SON for appellant.

(1) Defendant's seventh instruction should have been given. In a case of this character, where the sympathies and prejudices of the jury are naturally on the side of the prosecution, the court should declare in clear and unmis-takable terms that the accused is not bound to prove his innocence. No other instruction embodying this proposition was given. The refusal of this instruction was, therefore, reversible error. (2) The remarks of the prosecuting at-torney in his closing speech to the jury were highly prejudi-cial and were wholly outside the record. The failure of the court to rebuke them amounted to a judicial approval of them. State v. Moxley, 102 Mo. 374; McDonald v. Cash, 45 Mo. App. 66. (3) The testimony of the prosecutrix

is incredible in itself, and, being wholly uncorroborated, will not sustain the conviction. State v. Patrick, 107 Mo. 147; State v. Marcks, 140 Mo. 675.

R. G. MITCHELL also for appellant.

(1) The definition of reasonable doubt in the State's sixth instruction is not full and correct. It is the duty of court unasked to properly define reasonable doubt. State v. Clark, 47 S. W. Rep. 886. The instruction is manifestly erroneous in that it deprived the defendant of the benefit of any reasonable doubt as to his guilt that might have arisen from the insufficiency of the evidence. State v. Blue, 136 Mo. 41; State v. Wells, 111 Mo. 537; State v. Patrick, 107 Mo. 147, 156. (2) In his closing argument it is admitted the prosecuting attorney traveled outside the record. When defendant objected the court failed to rebuke the prosecuting attorney and in effect the weight of the court's approval was added to counsel's error. It will not do to speculate on the influence of argument on matters not in the record and the error is the more grave in closing argument. Tucker v. Henniker, 41 N. H. 371; Cleveland Paper Co. v. Banks, 15 Neb. 20; Brown v. Railroad, 66 Mo. 595; Marble v. Walters, 19 Mo. App. 134; McAdory v. State, 62 Ala. 154; Wilson v. United States, 149 U. S. 60; 1 Thompson on Trials, sec. 958. The reference in closing argument to defendant's objection to witnesses testifying, could refer to nothing except the exclusion of the testimony of witness George McHargue. No other witness was objected to or excluded. 1 Thompson on Trials, sec. 969; Bank v. Nichols, 43 Mo. App. 385; Marble v. Walters, 19 Mo. App. 134.

EDWARD C. CROW, Attorney-General and SAM B. JEFFRIES, Assistant Attorney-General, for the State.

(1) While defendant's seventh instruction may embody a correct principle of law, yet it was altogether

unnecessary in view of the other instructions given in the case, and of right was refused. An instruction is rightfully refused when the same principle is contained in another given. State v. Jones, 78 Mo. 278; State v. Sayers, 58 Mo. 585; State v. Anderson, 89 Mo. 312; State v. Mathes, 90 Mo. 571; State v. Jackson, 96 Mo. 200; State v. Thompson, 83 Mo. 257; State v. Elliott, 98 Mo. 150; State v. Thomas, 99 Mo. 235; State v. Gamble, 119 Mo. 427; State v. Woods, 97 Mo. 31; State v. Johnson, 76 Mo. 122.   (2)   When the instructions as a whole, declare the law, omissions in the way of particular instructions will not constitute grounds for reversal.   State v. Edwards, 71 Mo. 312; State v. Hatfield, 72 Mo. 518; State v. Mathews, 98 Mo. 125; State v. Mc-Namara, 100 Mo. 100; State v. Minton, 116 Mo. 605. (3)   The testimony shows abundant corroboration of the statements made by the prosecutrix, and defendant's objection in that respect must fall.   (4)   As to the remarks of the prosecuting attorney which meet with defendant's disapproval, we are unable to find anything in relation thereto that would blind the jury or tend to prejudice their minds against him.

GANTT, P. J.—At the October term, 1895, of the Chariton circuit court the defendant was indicted for an assault with intent to rape. He was duly arraigned and pleaded not guilty. The cause was continued to the April term, 1896, and again at the April term was continued to the October term, 1896.

On October 28, 1896, it was tried and defendant found guilty. Thereupon a motion for a new trial was filed, the only ground thereof appearing in this record, being the misconduct of one of the jury in qualifying after having expressed an opinion as to the guilt or innocence of defendant. The court sustained this motion for a new trial on the fourth of December, 1897.

State v. Edie.

At the April term, 1898, Judge W. W. Rucker, the regular judge, being absent, an election was held for a special judge to preside at said term and Hon. W. S. Stockwell was duly elected and took and subscribed the oath required. At this term the defendant was again tried and convicted and sentenced to the penitentiary for two years. It is from this conviction he appeals.

I. The principal assault upon the judgment of the circuit court is that the evidence does not support the verdict.

This argument requires a summary of the testimony. The prosecutrix was a widow with one child, a daughter about three years old at the date of the alleged assault. She lived about five miles from Salisbury in Chariton county, on a farm. Her family consisted of herself and little daughter, a brother Enoch Skinner, a young man about twenty years old, and a cousin, a man by the name of George McHargue who has been adjudged insane. The defendant lived about three quarters of a mile distant on another farm. On the morning of July 25, 1895, Enoch Skinner, brother of the prosecutrix, left home on business. After he left defendant stopped at her house and inquired if Enoch had gone to town, and was told that he had. Whereupon defendant left. During the afternoon the prosecutrix and her daughter and George McHargue went to Salisbury in a buggy to do some trading. Prosecutrix saw defendant in one of the stores in Salisbury during the afternoon. Having made her purchases, among which was a broom, she started home and after leaving the town discovered she had left her broom. They turned round and returned to Salisbury. As they did so they met defendant going toward his home, driving rapidly.

Having obtained the broom the prosecutrix and her cousin McHargue resumed their journey home. On the way they overtook defendant, who was then driving slowly.

He gave the road and they passed him and reached home. After her arrival at home, McHargue took the team to the barn and prosecutrix changed the little girl's clothing and the child followed McHargue. The prosecutrix then went up stairs to change her own clothing. Having removed her dress she heard someone coming up the stairsteps whom she took to be her cousin McHargue. She stepped to the head of the steps, opened the door and looked out and saw defendant coming up the steps.

She told him to go down, that she would be down in a few minutes; but he kept coming up, whereupon she shut the door, and braced herself against it, as the lock was broken. Defendant pushed the door open and prosecutrix seized her dress and began putting it on, and told defendant if he didn't let her go down stairs she would call George McHargue. He said, "Halloo for George. I met him going out as I came in. George can't hear you."

Then she threatened to jump out of the window. Defendant then produced a bottle of wine and told her she had to drink some. She told him she didn't want any. She then ran to the door again, but he beat her there and in her effort to get him away from the door he threw her against the wall. He then caught her and threw her on the bed. He got on her and held her down with his hands on her shoulders and his knees on her body. Thereupon she screamed as loud as she could and he threw the bed covers over her head, and held them there. Defendant then got off her body and pulled up her clothing and put his hands on her privates. She gave a whirl and halloed for George again, and McHargue hearing her, came up the steps.

When McHargue reached the top of the steps, defendant loosed the prosecutrix and McHargue asked him what he was doing there, whereupon defendant knocked him down. Whereupon defendant left the house, saying to the prosecu-

trix that if she tried to do anything he would tell a few things he had heard.

J. W. Owens testified that he lived about two hundred yards from the home of prosecutrix. On the afternoon of July 25, 1895, he was at his home. He heard a terrible stamping and tramping over at the house of prosecutrix, like somebody was aiming to tear the house down. Heard George McHargue swearing pretty loud. He went up to see what the trouble was.

As he went up to the house he saw Bob Edie, the defendant, leaving the house of prosecutrix. He heard something like a scuffle. When he got there the prosecutrix was in the room working around. He asked her what the trouble was, and she said the baby fell out of the buggy and McHargue got mad about it.

The prosecutrix testified that the first person she saw after the assault was Bill Owens. He said to her, "Why, George is mad ain't he?" and she answered "Yes." She said she hated to tell him what was the matter until her brother Enoch came home. She thinks this was about six o'clock. She sat up that night until her brother came home, and told him about it. He said they could not do anything until next day.

She testified that she didn't go to any of the neighbors that night because she was hurt. As soon as she felt able she went to her sister's. Enoch Skinner testified that his sister made complaint to him that night upon his return home about 11 o'clock or later.

About 9 o'clock next morning Enoch went to the field, where defendant was making hay. He at once approached defendant and demanded to know what made him treat his sister as he had the night before. He testified defendant said he didn't aim to hurt her and commenced begging. He said he wanted to settle, didn't want any trouble. Enoch told him he was not the one to settle with, to come down and

see his sister. Defendant came down and went in the house and apologized and said he was sorry for what he had done and aimed to settle it. Thereupon Enoch said to the prosecutrix, "Don't be light on him at all," and the prosecutrix said, "Not less than $800 will settle it." He said he didn't have that much money. They gave him two days to raise it. He again apologized and said he knew she was an honest woman, and he was sorry for what he did.

Witnesses for defendant testify that Enoch came into the field and began to curse and abuse defendant next morning, and threatened him with the law and demanded $600. The prosecutrix made affidavit in a few days and defendant was arrested. She also brought a civil action against him for damages, but being unable to give bond for costs it was dismissed on motion.

George McHargue was tendered as a witness, but upon objection by defendant was excluded because he had been adjudged insane by the probate court.

Mr. Saunders was called to prove the reputation of defendant, but testified he did not know what defendant's neighbors generally said about his character as a peaceable, law-abiding man. Never heard it discussed prior to this occurrence. He says he was at home when Enoch Skinner came next morning to see defendant. Defendant was cutting hay on Mr. Saunders' land. Mr. Saunders says Enoch went immediately to defendant. He walked out that way and when he got in hearing distance he heard Enoch say: "You have to settle this with me." Defendant says, "I don't know what you want me to do" and Enoch swore and said they wanted $600. Defendant said "Well I will come down in the morning and see about it." Enoch said, "No you will go right now," and defendant immediately just slipped off the mowing machine, unhitched his horses and started off with Enoch. Rutliffe and Kitchen were present.

Rutliffe testified he was related distantly to defendant;

that he was present in the meadow when Enoch came to them. He said Enoch rode up and began to curse Edie the defendant for everything he could think of, and told him he would blow his brains out if he had a gun. Defendant denied that he had any trouble with prosecutrix, but he went down there with Enoch. This witness testified that defendant's reputation was good "before this scrape."

Defendant, called in his own behalf, was asked this question: "You may state whether or not on the 22d day of July, 1895, or at any other time you ever made an assault upon the prosecuting witness in this case with the intent to ravish her or do her any bodily harm?" He answered, "No, sir."

Two juries of Chariton county have pronounced defendant guilty upon this evidence, and the trial court has approved this verdict, and now we are asked as an appellate court to say this verdict is without evidence to sustain it. In other words that it is so clearly the result of passion and prejudice that it can not stand. It is not asserted that defendant was not at the house of prosecutrix at the time of this alleged assault, because his own witness J. W. Owens testified that he was attracted by the scuffle and stamping at the house and went down to see what was the matter and saw defendant leaving and going up the road just as he went down. The prosecutrix had sworn to the assault and to her scuffle with defendant and her efforts to repel him and Owens corroborates her as to the noise and to the fact of defendant's presence there at the time. Prosecutrix had testified that, alarmed by her screams, George McHargue had come to her assistance and defendant knocked him down the stairs. Owens says George was swearing loudly and he asked prosecutrix if George wasn't mad and she said yes.

The defendant was a witness on the stand and he made no denial of his presence at the house of prosecutrix that

afternoon.   He does not deign to mention or deny any of the particulars of the assault as testified to by defendant, but skillfully covers his denial under the general allegation that he did not assault prosecutrix *with intent to ravish her,* thus placing his own construction upon his acts on that occasion.   He nowhere denies that he went to the house next morning with her brother and apologized and admitted he had wronged her.   The theory of defendant is that because the prosecutrix answered J. W. Owens in an evasive manner when he came to the house just after the occurrence and did not at once make a full statement of the outrage to him before she had seen her brother, that necessarily and as a matter of law there could be no attempt to rape her. We do not so understand the law.   If corroboration be essential, surely her screams for help and the noise of the struggle which brought her cousin to her relief and thus foiled her assailant, are the strongest kind of corroboration.

The assault occurred at or about six o'clock in the afternoon and the prosecutrix did not sleep until she informed her brother upon his return home, and the young man is found next morning at 9 o'clock in the hay field, cursing and denouncing defendant for the outrage in the presence of three witnesses.

We do not believe any well considered case can be found in which an appellate court has assumed the right to set aside a prosecution and conviction where the injured woman has complained to her natural protector and kinsman immediately upon seeing him, merely because she did not tell a stranger or neighbor sooner.

Surely, no such case can be found, when the prosecutrix has been corroborated by a disinterested witness as to her efforts to resist and by the actual presence of defendant on the scene.

The jury heard the evidence, saw the defendant and

the prosecuting witnesses and it was their province to believe the prosecuting witness. The trial court also had this opportunity, and approved the verdict. The demurrer to the evidence was properly overruled. [State v. Marcks, 140 Mo. 656.]

II. The circuit court among other instructions gave the following:

"5. The court instructs the jury that *the law presumes the innocence, and not the guilt of the defendant, and this presumption of innocence attends the defendant throughout the trial and at the end entitles the defendant to an acquittal, unless the evidence in the case, when taken as a whole, satisfies you of his guilt beyond a reasonable doubt, as defined in these instructions.*"

The court then refused the following asked by defendant:

"7. The law does not require the defendant to prove that he is innocent of the crime charged against him. The law presumes his innocence, and you are bound to acquit him unless the State has established his guilt by the evidence beyond a reasonable doubt."

It is clear that the court having given instruction number 5 committed no error in failing to repeat it. The defendant had the full benefit of the principle involved in his instruction.

III. The court in its instruction numbered "6" for the State gave this instruction on reasonable doubt:

"6. The court instructs the jury that before they can convict the defendant they must be satisfied of his guilt beyond a reasonable doubt; such doubt to authorize an acquittal must be a substantial doubt of the defendant's guilt, with a view to all the evidence in the case, and not a mere possibility of his innocence."

This was sufficient, but in addition to this at the instance of defendant the court gave another instruction on reasonable doubt in these words:

"6. In determining whether or not you have a reasonable doubt as to defendant's guilt, the court declares the law to be that if after considering all the evidence before you, you are neither morally certain that defendant is guilty, nor, on the other hand, morally certain that he is innocent, then a reasonable doubt exists, and it becomes your duty to give the defendant the benefit of said doubt and acquit him."

In view of these instructions the defendant has no cause of complaint of instructions on the subject of reasonable doubt.

IV. One other assignment remains to be considered.

It is insisted that the remarks of the prosecuting attorney in his closing speech were highly prejudicial and constituted reversible error. Learned counsel have not printed in either of their briefs the particular words to which they object.

Going to the transcript we find that in the course of Mr. Collet's speech to the jury he used this language. "Who is responsible for her present physical condition? Certainly not the prosecution in this case. If Bob Edie had kept that 157 pounds of weight of his off her that day, had made no assault on her as she described here, the probabilities are that she would to-day as she was then, be in good health, strong and robust, physically able to stand the assault made upon her by Mr. Crawley without breaking down perhaps and crying."

Defendant's counsel objected because there was no evidence of this character. The court thereupon admonished Mr. Collet to keep clearly within the record. Resuming his argument Mr. Collet said: "The gentlemen object. They talk about these outside issues and when I attempt to answer them they object. They have been objecting all the time.

They object to the case being instituted. They object to the witnesses going on the stand. They object to everything that has been done that tends to show the guilt of defendant," etc. What called forth the first remark of Mr. Collet does not appear. We might speculate that some reference was made by defendant's counsel to the prosecutrix crying. If so we can not, without more appearing than does, say the reference to her condition was a breach of propriety.

She had testified that defendant got on her abdomen with his knees and that she was so hurt that for several days at least she was unable to go anywhere, either to her sister's or to Salisbury.

The court admonished counsel to stay in the record and no exception was saved because the court did not go further. As to the remainder of the speech as to "the objections," we can not say that it exceeded the limits of fair discussion.

In State v. Emory, 79 Mo. 463, Judge SHERWOOD well said: "Prosecuting attorneys are now so 'cabin'd, cribb'd, confin'd,' that they are really afraid to make an effective speech; to indulge in just and fierce invective against a criminal, lest if a verdict be won for the State, the judgment will be reversed."

The burden is on the defendant to establish error and we do not think it has been done in this case.

The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.